### John Gregory vs. Arthur Sherman and Another.

In a suit upon a recognizance, a certificate of which was annexed to a writ of replevin and signed by the magistrate signing the writ, the defendants claimed that the magistrate inserted their names without authority, and that he signed the certificate without intending to make a record of a recognizance. Held—

1. That the certificate was to be received as a record.

2. That it was competent for the defendants to contradict it, and show that they never entered into the recognizance.

The magistrate in taking the recognizance on issuing the writ was acting in a ministerial capacity.

A certificate of such a ministerial act, though it becomes part of the record, is only primâ facie evidence of the facts which it states.

Debt on a recognizance upon a writ of replevin; brought to the Court of Common Pleas of Fairfield County. The case was tried to the court, on the general issue, before *De Forest, J.*

On the trial the plaintiff offered in evidence, to prove the taking of the recognizance of the defendants, the original writ of replevin in which the recognizance was claimed to have been taken. The plaintiff obtained the writ among the files of the Court of Common Pleas, to which it was returnable. The defendant in that suit, now the plaintiff, had obtained judgment in the action by nonsuit for costs and damages. When the writ was issued the justice had it presented to him already filled out as it now appeared, except his signature, and he signed the same without knowing its contents and not supposing that there was any certificate of the taking of a recognizance in it or attached to it. In signing the writ the justice neither intended to make, nor supposed that he was making, a record. All the evidence offered to prove the circumstances attending the signing of the writ by the justice was received subject to objection, by consent of parties.

The plaintiff claimed that the certificate on the writ was the record of the justice of the taking of the recognizance, and that, if it were not the record of the justice, it had become, by being returned to the Court of Common Pleas, a part of

the records of that court, and as such was competent record evidence of the taking of the recognizance, and that being such record evidence no evidence could be admitted to explain or contradict it.

The defendants claimed that the certificate was not a record of either the justice or of the Court of Common Pleas, and was not competent evidence of the taking of the recognizance; and that, if it were so, yet that they could show by parol in contradiction of it that they never did in fact appear before the justice and enter into the recognizance.

The court, *pro formâ*, admitted the evidence offered to show the circumstances attending the signing of the writ by the justice, for the purpose of ascertaining whether the certificate was made by the justice as a record of the taking of the recognizance; and decided, *pro formâ*, that under the circumstances the certificate was not a record, either of the justice or of the Court of Common Pleas, of the taking of the recognizance; and refused to admit the certificate in evidence, and rendered judgment for the defendants.

The plaintiff moved for a new trial for error in this ruling of the court.

*W. H. Noble*, in support of the motion.

1. A record "is a written memorial, made by a public officer authorized by law to perform that function, and intended to serve as evidence of something written, said or done." Bouvier's Law Dict., *Record*. "It is an authorized testimony in writing contained in rolls of parchment and preserved in a court of record." Tomlin's Law Dict., *Record;* *Davidson* v. *Murphy*, 13 Conn., 218.

2. A recognizance is an obligation of record. *Starr* v. *Lyon*, 5 Conn., 540; *New Haven* v. *Rogers*, 32 id., 224; *Green* v. *Ovington*, 16 Johns., 58. Is in the nature of a judgment. *Jefferson* v. *Morton*, 2 Wms. Saund., 7, note 4. Is a record. *Buston* v. *Ridley*, 11 Mod., 223.

3. The bond in question is a record. 1st. Because it is the acknowledgment of an obligation in full compliance with statute requirements in replevin, certified by the justice on

issuing the writ. 2d. Because it is the bond in replevin, given by statute as a proper form therefor, certified by said justice. Rev. of 1866, p. 78. 3d. Because having been in such form and certificates sent up on the process in replevin, it has become a part of the record in the Court of Common Pleas. Freeman on Judgments, § 78; *Gaylord v. Couch*, 4 Day, 374; *Huntington v. Birch*, 12 Conn., 151; *Nichols v. Bridgeport*, 27 id., 466; *Green v. Ovington*, 16 Johns., 58.

4. It being such a record, its production in court is the highest evidence of the taking of such recognizance. 1 Stark. Ev., 189; *Gray v. Davis*, 27 Conn., 447; *State v. West*, 3 Ohio S. R., 519.

5. As such record, while it stands, it imports absolute verity and cannot be contradicted by parol or in any way collaterally impeached. *Rogers v. Moor*, 2 Root, 159; *Holcomb v. Cornish*, 8 Conn., 380; *Huntington v. Birch*, 12 id., 151; *Fox v. Hoyt*, id., 491, 497; *Burgess v. Tweedy*, 16 id., 42; *Douglass v. Wickwire*, 19 id., 492; *Hawley v. Middlebrook*, 28 id., 534; *Coit v. Haven*, 30 id., 196; *Spaulding v. Chamberlain*, 12 Verm., 538; *Barnard v. Flanders*, id., 657; *Pike v. Hill*, 15 id., 184; *Leighton v. Leighton*, 1 Stra., 210. Evidence is inadmissible to contradict a recognizance certified of record. *Cook v. Berth*, 108 Mass., 76; *State v. Daily*, 14 Ohio, 91; *Calvin v. State*, 12 Ohio S. R., 60; *State v. Williams*, 14 id., 140; *Green v. Ovington*, 16 Johns., 58.

*C. Thompson*, contra.

1. The certificate is not a record of either the justice or the Court of Common Pleas. The court finds that "in signing the writ the justice neither intended to make, nor supposed that he was making, a record." A record importing verity cannot be made unintentionally, nor by having a writ returned to another court. "In most cases the original process with the officer's return accompanies the record, yet neither the process nor the indorsement constitutes in truth any part of the record of *the court*, in any sense in which records import verity." *Fox v. Hoyt*, 12 Conn., 498. "Neither the minutes of the justice, nor the execution signed by

him, nor both, constitute such a record." *Davidson* v. *Murphy*, 13 Conn., 213; *Wales* v. *Smith*, id., 217, note.

2. If, however, as seems to be implied in *Fox* v. *Hoyt*, there may be a record which does not import verity, and if a recognizance may be proved by such a record, then said certificate may be "proper evidence of said recognizance," and parol evidence would be admissible to disprove it. Gen. Statutes, 1875, p. 423, sec. 9, seems to allow it after notice given, as in this case. *Sears* v. *Terry*, 26 Conn., 273.

CARPENTER, J. This is an action on a recognizance claimed to have been entered into by the defendants on suing out a writ of replevin by one of them. On the trial in the Court of Common Pleas the defendants denied that they ever entered into the recognizance, and when a certificate thereof was offered in evidence objected to its admission. The court thereupon went into an inquiry and heard parol evidence, (what it was does not distinctly appear,) for the purpose of ascertaining whether the certificate was a record and admissible in evidence. Upon such hearing the court held and decided that under the circumstances the certificate was not a record of the taking of the recognizance, and refused to admit it in evidence.

A majority of the court are of the opinion that there was error in that ruling.

Two questions appear to have been made: 1. Was the certificate of the recognizance admissible in evidence? 2. If admissible, was it competent for the defendants to impeach it by parol evidence? The first question was determined in the negative.

We entertain no doubt that the certificate in question should have been received. Its admissibility did not and could not depend upon the intention of the justice in signing it; nor could it be affected by his ignorance of the nature and character of the documents which he signed. Whether it was a record or not was a question of law, and its solution could not be aided by any parol evidence whatever.

But even that question does not seem to be very important

in this branch of the case; for whether the certificate is to be regarded as a record, or as legal evidence of an obligation on which the suit is brought, the result must be the same. If it is to be regarded as strictly and technically a record, and, as such, importing verity, it was clearly admissible. If it is merely a certificate of a ministerial act by a magistrate, appended to and accompanying a judicial process, still we think it was admissible.

A bond or recognizance was required by statute, and without it no writ could lawfully issue. The certificate was regularly signed by the magistrate, was in the usual form, was appended to the writ, upon the strength of it the writ issued, and by virtue of the writ one of the defendants obtained the possession of the goods which he claimed; and the defendant in the replevin suit was not only called into court to answer to a charge of trespass, but the goods in question were taken from his possession. A document or obligation so important, and upon which such consequences depend, should not exist merely in the recollection of the magistrate. Written evidence of its existence is, and should be, required. We know of no legitimate way of proving that the required bond was taken except by the official certificate of the magistrate who signed the writ. This document purports to be that, and is primâ facie evidence of the truth of the facts therein stated, and should stand as satisfactory proof until the contrary clearly appears. In rejecting that evidence we think the court manifestly erred.

The second question, whether it was competent for the defendants to contradict the certificate, does not appear to have been directly and distinctly decided by the court below. Indeed the rejection of the evidence rendered such a decision unnecessary. Nevertheless we are inclined to think that both court and counsel considered it as involved and practically decided in the affirmative in the decision to admit parol evidence on the question of the admissibility of the certificate. At least counsel have argued the case upon that assumption; and as it is the most important question in the case we will decide it.

It is quite clear that in a certain sense, and for some purposes, the certificate under consideration is a record. In Swift's Digest, Vol. 1, p. 376, a recognizance is defined to be a "bond of record." The same definition is given in *Starr* v. *Lyon*, 5 Conn., 538. In *New Haven* v. *Rogers*, 32 Conn., 221, Judge HINMAN defines a recognizance to be "an obligation of record." In this it is not intended to assert that it is a record in the highest sense, as when we say of a record that it imports absolute verity. It is not the record of a judgment, not being the result or conclusion of a judicial proceeding. Even such records bind only parties and privies, and not them even if the want of jurisdiction appears on the face of the proceedings; and in case of tribunals of limited and special jurisdiction, jurisdictional facts may always be inquired into. Whether this record can stand on any higher ground than the records of such tribunals is at least questionable. The right and power of the justice to act are confined within narrow limits. He has no compulsory power. He can take the obligation of such persons and such only as voluntarily enter into it. Perhaps they should appear in person; but certainly he has no power to take the bond of any one who does not in some way authorize him to do so. Whether such authority is conferred or not is in the nature of a jurisdictional fact; so that, if in any sense this may be regarded as a judicial record, it does not follow that the party whose name appears in it as an obligor is precluded from showing that he never authorized it, and consequently that the act of the justice was void.

But the act was not judicial. The duty performed by the justice was not in its nature a judicial duty. There was no previous process to bring the parties before him, no plaintiff, no defendant, and no subject matter to be judicially determined. In no sense can it be said that the magistrate was administering justice to the parties under the forms of law; therefore he was not acting as judge.

It has been decided in this state that justices of the peace act in a ministerial capacity in the following cases:—In appointing appraisers to appraise land set off on execution.

*Fox* v. *Hills*, 1 Conn., 195. In the administration of a legal oath to a poor imprisoned debtor. *Betts* v. *Dimon*, 3 Conn., 107. In issuing warrants for the removal of paupers. *Stratford* v. *Sanford and others*, 9 Conn., 275. In appointing freeholders to assess the damages sustained by the owners of land through which a highway is laid out. *Crane* v. *Camp*, 12 Conn., 464.

We think that the act now under consideration is of the same nature and character, and that magistrates in taking bonds on issuing writs act purely in a ministerial capacity.

This certificate therefore is the record of a ministerial act, and, like an officer's return, is primâ facie evidence of the facts therein stated, but is not conclusive.

Our conclusion is—1, that this certificate should have been received in evidence; 2, that it was competent for the defendants to show, if the fact was so, that they did not enter into this recognizance.

If the course here indicated had been pursued in the court below, the inquiry would have been, not as to the intention of the magistrate in signing the certificate, but what relation did the defendants or either of them sustain to this transaction? Did they, or either of them, expressly or by implication authorize the magistrate to insert their names as recognizors? Suppose upon such inquiry that it had appeared that Arthur Sherman, one of the defendants, and the plaintiff in the replevin suit, had appeared before the justice with the writ and certificate prepared, knowing their contents, and had requested him to sign them, can any one doubt that he would be liable on this recognizance? Suppose both defendants under like circumstances had made the request, would not both be liable? It is true this record does not show that they did appear; neither does it show that they did not. That was not the point of the inquiry, and the finding does not touch that matter at all. Their presence before the justice, as above indicated, is consistent with every fact stated in this finding. The finding shows that the writ was presented to him, but does not state by whom; and wholly omits to state that it was not presented by the defend-

Gregory *v.* Sherman.

ants or one of them.  It does appear that on the trial the defendants *claimed* that they " never did in fact appear before the justice and enter into the recognizance;" but it nowhere appears, not even inferentially, that that claim was sustained by proof, or that any proof to sustain it was offered.

It is manifest therefore that there was a mis-trial, that the inquiry related to an immaterial matter; and as injustice may have been done, it is right that a new trial should be granted.

In this opinion the other judges concurred; except PARK, C. J., who, while assenting to the principles of law stated, yet was inclined to give a different construction to the record.

NOTE.—While it is an established rule that judicial records import absolute verity, it is not entirely clear from the authorities what constitutes the judicial record that has this attribute.  The distinction drawn in the present case, between those parts of a record that are merely incidental, even though necessary, to the judgment, like the officer's return of service or the certificate of the magistrate taking a recognizance, and those which record the action of the court, is believed to be the proper one.  This distinction is well stated by CHURCH, J., in *Fox* v. *Hoyt*, 12 Conn., 498.  He says: "Neither the original nor any intermediate process, nor the endorsement or attestation of service, constitutes in truth any part of the record of the court in any sense in which records are understood to import verity.  They prove nothing more than their own existence, except so far as the facts stated in them are established by the finding of the court, either directly or by reference to them.  Even the officer's return of service affords only *primâ facie* evidence of the facts stated therein."

It is indispensable to the validity of any judgment that the court should have jurisdiction, both of the subject matter, and of the person of the party against whom it is rendered.  In the case of a domestic court of general jurisdiction there is a conclusive presumption in favor of its jurisdiction in both respects, unless it appears upon the record, directly or by necessary implication, that there is a want of jurisdiction.  In the case of a domestic court of limited and special jurisdiction, this presumption does not exist, and although the record may find in terms that service was made upon the defendant, the fact may be shown that no such service was made.  In the case of a judgment of a court of general jurisdiction of a sister state the presumption of notice to the defendant does not exist, but the fact of want of notice may be shown even against an express finding of the court rendering the judgment.  A strictly foreign judgment, (that is, a judgment of some other country than the United States), is only *primâ facie* evidence even of the indebtedness found by it, and *nil debet* may be pleaded to an action of debt upon it.  *Coit* v. *Haven*, 30 Conn., 90; *Sears* v. *Terry*, 26 id., 273; *Landes* v. *Brant*, 10 How., 348; *Granger* v. *Clark*, 22 Maine, 128; *Cook* v. *Darling*, 18 Pick., 393.  The rule that jurisdiction is conclusively presumed in the case of a judgment of a domestic court of general jurisdiction is however

subject to this qualification—that where the court is acting under special authority and upon a matter outside of its ordinary jurisdiction, the presumption does not apply. *Denning* v. *Corwin*, 11 Wend., 648; *Granger* v. *Clark*, 22 Maine, 128; *Williamson* v. *Berry*, 8 How., 495; *Webster* v. *Reid*, 11 id., 437. But see *Harvey* v. *Tyler*, 2 Wall., 328; *Hahn* v. *Kelly*, 34 Cal., 391.

But where the jurisdiction actually exists the record of the court imports verity in the lowest as well as in the highest court. *Fox* v. *Hoyt*, 12 Conn., 491; *Raymond* v. *Bell*, 18 id., 89; *McLean* v. *Hugarin*, 13 Johns., 184; *Clark* v. *McComman*, 7 Watts & Serg., 469; *Billings* v. *Russell*, 23 Penn. S. R., 189; *Wright* v. *Hazen*, 24 Verm., 143.

This conclusive presumption of jurisdiction, where it exists, is entirely a different thing from the presumption that all things are rightly done—*omnia presumuntur rite acta*. This presumption applies to all the acts of a court of mere *competent* jurisdiction, whether it be general or limited, and may always be rebutted by proof to the contrary. *Voorhees* v. *U. States Bank*, 10 Pet., 449.

This rule, with regard to a conclusive presumption of jurisdiction over the person of the defendant in the case of a court of general jurisdiction, is repudiated or seriously questioned in several of the states; (*Cline* v. *Gibson*, 23 Ind., 11; *Glidewell* v. *Spaugh*, 26 id., 319; *Illinois Central R. R. Co.* v. *Goodwin*, 30 Ill., 117; *Gwin* v. *McCarroll*, 1 Sm. & Marsh., 351; *Edwards* v. *Toomer*, 14 id., 75; *Steen* v. *Steen*, 25 Miss., 513; *Hargis* v. *Morse*, 7 Kan., 417; *Howard* v. *Thornton*, 50 Misso., 291; *Rape* v. *Heaton*, 9 Wis., 328; *Pollard* v. *Wegener*, 13 id., 569; and in *Starbuck* v. *Murray*, 5 Wend., 157, MARCY, J., says that it is reasoning in a circle and assumes the very fact to be established, assuming that the paper is a conclusive record because the defendant was served with notice, and that the defendant was served with notice because the paper is a conclusive record;) but the rule is supported by so great a preponderance of authorities that ELLSWORTH, J., says in *Coit* v. *Haven*, 30 Conn., 198, that he considers the point no longer open to dispute. It is very clear that it must be taken as the settled law of this state.

There would seem to be room for a serious question whether in giving the judgments of our own courts the benefit of such a conclusive presumption and denying it to those of the courts of a sister state, we are not violating that provision of the constitution of the United States which provides that "full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state;" but the point has been fully considered in a number of cases; (see the elaborate opinion of HOSMER, C. J., upon it in *Aldrich* v. *Kinney*, 4 Conn., 382, and the numerous authorities there referred to; also *Pearce* v. *Olney*, 20 Conn., 544;) and it is held that the rule does not conflict with that provision.

The persons affected by the presumption of legal notice are of course only the parties to the judgment and their privies. Their remedy in case no legal service had been made is only by some direct proceeding to open or set aside the judgment, or by injunction to restrain the party holding it from using it against them. The direct proceeding would seem to be either by a writ of error *coram nobis*, (1 Swift Dig., 790,) or by a petition for a new trial, (Gen. Stat., tit. 19, ch. 15, sec. 1,) both of which must be brought to the same court that rendered the judgment, and within three years after it is rendered; while a bill for an injunction can be brought in any court having the requisite equity jurisdiction, after the three years have expired, or, in case of emergency, before, and with no

limitation as to time except that the party would not be allowed to sleep upon his rights after notice of the judgment against him. And it seems that it is necessary for the injured party to resort to these modes of redress even though the judgment has been obtained by fraud. *Granger* v. *Clark*, 22 Maine, 128; *French* v. *Shotwell*, 5 Johns. Ch., 555; *Morris* v. *Galbraith*, 8 Watts & Serg., 166; 1 Smith Lead. Cas., C. & H. notes, 6th ed., 995.

The books do not make it clear precisely what is meant by a court of "general jurisdiction," and what by a court of "limited or inferior jurisdiction." Under the common law meaning of the terms a court was held to be one of general jurisdiction where the jurisdiction extended to all actions recognized by the common law, without limitation as to the place where the cause of action arose or as to the persons to be made parties. Thus a palatinate court was held to be a court of general jurisdiction, because, though limited in territorial jurisdiction, it yet had jurisdiction of causes of action wheresoever arising. 2 Bac. Abr., 106; *Peacock* v. *Bell*, 1 Wms. Saund., 74. Freeman, in his work on Judgments, sec. 122, regards the distinction as substantially that between courts of record and courts not of record, and it is so laid down in *Hahn* v. *Kelly*, 34 Cal., 414; but this proposition can not be sustained. In *Simons* v. *De Bare*, 4 Bosw., 547, the City Court of the city of Brooklyn is held to be an inferior court, because limited in its jurisdiction to the case of defendants residing or served with notice within the city. And the county courts of the state of New York were held to be inferior courts for a like reason. *Frees* v. *Ford*, 2 Seld., 176. The Court of Common Pleas of that state is held to be a court of general jurisdiction because it has power by statute to try "all transitory actions, wherever the cause of action may arise." *Foot* v. *Stevens*, 17 Wend., 483; *Hart* v. *Seixas*, 21 id., 40. And it is held in *Harvey* v. *Tyler*, 2 Wall., 328, that where a statute gave to county courts jurisdiction to hear and determine all causes at common law or in chancery within their respective counties, they were courts of general jurisdiction. The terms "superior" and "inferior" seem to be used with reference to the character of the jurisdiction rather than the grade of the court. Thus it is held that a court is not an inferior one by reason of an appeal lying from it to a higher court. *Grignon's Lessee* v. *Astor*, 2 How., 319. In *Simons* v. *De Bare*, before referred to, BOSWORTH, C. J., says, (p. 553 :) "To constitute a court a superior court as to any class of actions, its jurisdiction of such actions must be unconditional, so that the only thing essential to enable the court to take cognizance of them is the acquisition of jurisdiction of the persons of the parties." And on p. 555, "If the court had a general jurisdiction of an enumerated class of actions, without reference to the place where they arose or the parties to them resided or to the amount sought to be recovered, being a court of record, it might be *quoad hoc* a superior court within the meaning of the rule." In Speers's Eq. R. (So. Car.), 151, HARPER, Chancellor, says: "My own opinion, founded on very mature reflection and examination of authorities is, that if any [every ?] question of civil right may be directly or indirectly brought before a court, this constitutes it a superior court of general jurisdiction." See also remarks of Mr. Justice BALDWIN, in *Grignon's Lessee* v. *Astor*, 2 How., 319; also cases cited in 1 Smith Lead. Cas., C. & H. notes, 6th ed., 1034.

Whatever may be the proper definition of the terms we have been considering, it is very clear that under our practice, and that of our sister states, the higher courts of a state are considered as courts of general jurisdiction. All the courts of this country are strictly courts of limited jurisdiction; (*Griswold* v. *Mather*,

Gregory *v.* Sherman.

.5 Conn., 439; *Perkins* v. *Perkins*, 7 id., 565; *Raymond* v. *Bell*, 18 id., 88; *Kempe's Lessee* v. *Kennedy*, 5 Cranch, 185;) but it is not held in any case that the superior courts are not entitled to the same presumptions in favor of their jurisdiction that any court could have. And in *Coit* v. *Haven*, 30 Conn., 197, ELLSWORTH, J., speaking of a judgment then under consideration by the court, and which had been rendered by the Superior Court of this state, says: "This judgment was recovered before one of our own courts of general jurisdiction, and so is distinguishable from the judgment of a foreign court or one of a limited and special jurisdiction." And STORRS, C. J., in *Sanford* v. *Sanford*, 28 Conn., 12, speaks of the Court of Common Pleas of the state of Ohio as a court of general jurisdiction. The term "limited" where applied to jurisdiction is generally used, as above, in connection with the term "special"—indicating that it relates less to the limitation of the amount that may be recovered than to the character of the subject matter of the jurisdiction; and it seems very doubtful whether the limitation of amount enters into the distinction between courts of limited and those of general jurisdiction, unless it be in the case of courts of such actual inferiority as those of justices of the peace, which are classed with inferior courts in *Hahn* v. *Kelly*, before cited, and so treated in 2 Am. Lead. Cas., 633. But see remarks of BOSWORTH, C. J., before cited, where he speaks of the absence of limitation as to amount as one of the incidents of a court of general jurisdiction.

A distinction that, for the purpose of presumptions in favor of judgments, rests wholly upon the character of the subject matter of the jurisdiction, and not upon the character or quality of the court itself, seems to be unreasonable, and unworthy of an age that is discarding technicalities and seeking to make its administration of justice practical and sensible. And while it seems absurd to give a higher credit to one of our lower courts, because it has, in a technical sense, a general jurisdiction, than is given to a court of special jurisdiction which may yet be one of importance and dignity, as a city court, it seems unreasonable to make the presumption as to jurisdiction over the person rest upon and coincide with the presumption as to jurisdiction over the subject matter. The two have no natural relation whatever. The service of notice on a defendant is an act done, not implied, and done with the same formality, and by as important an officer, and is evidenced by the same return, in the case of one court as in that of the other. The necessity of the fact is no greater in one case than the other; in both it is fundamental and absolutely essential to the jurisdiction. Why then should it be conclusively inferred that it exists in one case more than in the other? If the presumption is allowed in favor of a court of general jurisdiction, it would seem as if the same considerations would allow it in every other, except so far as the actual (not mere technical) inferiority of the court might make it unreasonable. Would it not however be more consonant with our modern ideas of justice to allow any defendant against whom an action of debt on a judgment should be brought, to aver in his plea, and prove if he is able, that he never had notice of the suit; the presumption in favor of the judgment being, like an officer's return, *primâ facie* evidence of the service, and requiring clear proof to the contrary to overthrow it? If however the doctrine of conclusive presumptions of notice be maintained, there would seem to be no good reason why it should not be applied to every court of sufficient dignity and importance, whose procedure is according to the course of the common law. A change of the law in either of the directions suggested would probably have to be effected by legislation, but it is one of those subjects that legislation might profitably deal with.                                    *R.*